Which is 18-15303 Freedman v. MagicJack Volatec. All right, Mr. Knudsen or Knudsen? Are we pronouncing the K? Well, it depends. If you ask my dad, he would say Knudsen, and if you ask me, I say Knudsen. It depends on whether it's Norwegian or Swede. It's Norwegian, believe it or not. Very good. We'll see if you can say it. Well, he grew up in Racine, Wisconsin, and then absconded off to San Diego, California, and was ostracized by his family for having done so. So all his brothers in Wisconsin say Knudsen, and we in San Diego say Knudsen because we always like to think ourselves part of the Knudsen cottage cheese industry. We weren't, but that's just the way it went. All right, very well. Mr. Knudsen, without a K, kick us off. Sure, if I could. This is, I think, a rather straightforward case, for lack of a better term. I think the district court judge got snookered into something that the defendants raised earlier on that got her thinking, is this an Israeli derivative versus direct case, or is this an American jurisprudence derivative versus direct case? And Beaver versus Nicholas Financial, which we cited in our briefs, makes it very clear. It doesn't matter. It's going to be governed by Florida law, and the reason why is because Magic Jack might have been an Israeli corporation, but it was operated through its YMAX subsidiary here in Florida, in West Palm Beach. Can I ask what is maybe an ignorant but to me kind of basic question about determining whether the cause of action is direct or derivative? If this arises out of the federal securities laws, why is it exactly that we're looking through to state or Israeli or whatever law to determine whether the action is direct or derivative? There may be a really good and easy answer to that. I'm just not sure what it is. I absolutely agree with Your Honor. This is an issue of federal statutory violation. If there's a statutory violation under Florida law, Stroulouza, which the court cited, DeNura, which we cited, Rommel, which we cited as well, Newsom, which we also cited. I like that case. Yeah, it's direct. All right, so let me ask you this, though, because I'm not really sure. I wasn't trying to throw a fastball, but I wasn't trying to throw a softball either. I'm not really sure that if this is governed by federal law, that sort of cinches the deal for you because at least as I read this case out of the U.S. Supreme Court, J.I. case, the court says the injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done to the corporation rather than the damage inflicted directly upon the shareholder. That sounds to me like derivative. Although J.I. was a Section 10B. It was not a Section, no. There's a difference because Section 14A does not require intent. It does not require scienter. It is a straightforward did the proxy statement actually disclose factually all the material facts that should have been provided. Counsel, I'm not sure derivative versus direct affects your burden of proof. The question is whether the relief you're seeking is common to the other shareholders. Correct? It is, and I'll tell you why. It's because what has changed, and this wasn't in the briefing, but what has changed in this case is that the actual acquisition of MagicJack has now occurred. And so that means the only damages are going to be monetary in nature. There's no injunctive relief. And the only people that are going to be entitled to receive monetary damages are going to be those that were subjected to the . . . I'm assuming the accuracy of your contentions in your second amended complaint. Okay. And I am assuming that those would be violations of the code. Correct. It seems to me still the damages you're seeking are common to all shareholders, not just in particular your client. It has to be shareholders that were subject to the April 19th proxy statement that reelected the board members, and the July 31st, 2017 . . . No, the shareholders in place at . . . At that time period. No. Correct. Well, that would be standing issues if a shareholder came along and challenged something that occurred when he was not a shareholder. And then you get into an issue, quite frankly, because this is a class action, quite frankly, where you could determine whether or not these shareholders actually received . . . They should have received it because it would have been mailed, the proxy statement. The district court gave you a clear signal before the second amended complaint that you needed to plead in a verified complaint that there had been some demand or that a demand would have been futile. Fair? The district court did so, but I don't require that . . . It was just a wrong decision, and I hate to say that, but it was just a wrong decision based upon what Florida law says. If you've got a statutory violation, it's a direct claim. It's not a derivative claim, so I don't know where to go from there. I don't really understand that, frankly, because you said earlier in response to my question about J.I. Case, you said, yeah, that's a Section 10 case. Well, that's a statutory violation, too, and the Supreme Court says it's derivative. Because Section 10B has a scienter requirement? I don't understand that because direct versus derivative derives . . . I shouldn't really put it that way, but derives from the nature of the relief sought, right? Not sort of the front-end elements, scienter, materiality, whatever. At the end of the day, if the relief sought runs to everybody or some substantial subset of everybody who was in play at the time, then it's derivative, right? It's a little bit of both, and let me explain why. It is derivative if you have to have a scienter requirement on a Section B or a Rule 10B-5. You're going to need that. You don't need that. It's strict liability under 14A. But just explain to me how that . . . maybe I'm just dense as a . . . Just explain to me why it is that that affects the direct versus derivative nature of the action. Because if it's strict liability, it doesn't matter what the company was thinking, what the directors were thinking, what they were actually trying to accomplish, is if it is material, that's the real key. And what we say is material is the fact that they had a $9.50 shareholder offer on the table  Let me take you back to the beginning of your argument because it's one thing I wanted to step back toward. You said the court erred by saying that Israeli law controlled this. I think the court said it was state of incorporation. I'm with Judge Newsom. I'd like to backtrack a little bit and make sure I understand how that rule came about, if it came about. Is there really any distinction, though, between Israeli law on what's derivative and Florida law on what's derivative? Because even if Israeli law is unclear or, if you're right, Israeli law doesn't apply, then don't you apply the law of the forum on this issue? The court was ultimately determined that Israeli law, it didn't matter because it was going to apply Florida law. And that's really the law of the forum that should apply. The difference is that Israeli law does not recognize direct shareholder actions. And that was kind of the argument that the defendants were trying to— Do we know that from the translation of these opinions? Apparently so. Because it seemed to me that Israeli translation was because of the relief sought, this is derivative, not direct. Which is what I think Judge Rosenberg would have said about Florida law or what she intimated about Florida law anyway. And that's why, quite frankly, I couldn't understand why she went with Straluza. Straluza really didn't deal with the statutory violation. It had to do with, quite frankly, whether or not it was a common duty or not. It did recognize and cited De Niro, which did say that there is a statutory right for direct action. In other words, if there's a statutory violation or a breach of contract, which is another vein that you can go down. And so she never really, quite frankly, focused on that issue. I think she just got sidetracked, quite frankly. And what I wish would have happened is if we had had this argument before her, because she decided the case without oral argument, I think this could have been clarified at the district court level. Because I just still see this as a straightforward statutory violation. Strict liability under 14A, there's no real question about that under the laws that— But it seems to me the law is this. It doesn't matter whether you're pleading a statutory violation. I don't think you can plead a violation of statute that's not a, quote, statutory violation. The question is what type of relief are you seeking? If you're saying that I am a disassociated investor who was singled out and mistreated, that's a direct claim. If you're saying that the corporation took actions that violated the statute that affected all shareholders across the board, then the claim derives from the corporation's duty to the shareholders. So it seems that's a derivative claim. Isn't that the simple distinction between these things? No, because I think under Section 14A and Rule 14A-9, the claim is direct to the shareholder because it goes directly to the value to the shareholder. Why didn't you file a class action? The shareholder was signaled out? Well, two separate questions. Class action applies because all shareholders that meet within the class definition, and that is a matter of, quite frankly, class notice and class claim process, would comply with the requirement to receive the relief. If it was like, you know, I liked the name of the company and I didn't really give it... Well, you also have to show commonality and typicality. Commonality means all the shareholders have similar... They receive the same proxy statement. Typicality means that the class's claims are similar to that of the class rep's claims. Correct. Typicality... Doesn't that further establish the derivative nature of the claim? No, not at all. Commonality is very easily proven by, quite frankly, every class member received the exact same proxy information. It doesn't differ. They didn't send something to somebody else then from somebody else, whatever. It's the same. Typicality just means that my client, Robert Friedman, on behalf of himself and the class is saying, I was denied a higher compensation per share price that was known to the company but was never disclosed so that they could get... and acted on this July 31st, and that denied me fair corporate suffrage, which basically means I was entitled to money that they're basically trying to keep for themselves now. And the nub of the matter to me is how is his claim, I was denied money that they're keeping for themselves, different from the next shareholder and the next shareholder and the next shareholder and the next shareholder and the next shareholder. And it can't because if the proxy statement was uniformly misleading for everybody, it's not like they sent out secret notes. Right, so it affected everybody the same way, right? It affects everybody. It's the same way. Okay, so at least to me that's very telling. Okay, so you're a minute and 45 over, so let's hear from your adversary. Thank you. All right, Mr. Reeder? Ryder. Ryder, golly, 0 for 3. Invariably pronounced Reeder, I think. All right, very well. Good morning, your honors, and may it please the court. Again, Eric Ryder from Brian K. Velayton-Paisner for the appellees, Magic Jack, the company, and the individual director defendants. It is important to focus on what the plaintiff actually alleged in his complaint. Two proxy statements he challenges. March 15th, 2017 proxy issued in connection with a shareholder vote on April 19th, 2017. That vote appointed directors to the Magic Jack board. And then he complains about June 23rd proxy statement issued in connection with the July 31st vote, and that vote approved certain compensation for directors. Those are the only two proxies he challenges under Section 14A. He does not challenge the proxy that was issued much later in February 2018 in connection with the vote in March 2018 to approve the sale of Magic Jack to B. Riley. It's also important to consider the relief he seeks for the alleged injuries. He seeks no relief relating to the election of directors as a result of that March 15th proxy. He seeks recoupment, which is really return to the corporation, of compensation approved as a result of the June 23rd proxy. And remarkably, he seeks damages relating to the stock price received for the sale of his shares in the B. Riley transaction, even though he doesn't allege a misstatement in the proxy relating to that transaction. So is your point as to the direct or derivative nature of all of this is that the relief sought inures to all shareholders equally? That is correct. In effect, the value of the corporation, the share price, whatever, but it inures to everybody. Right. I mean, these same issues also result in a lack of causation to his claims that would easily support affirmance on the grounds of our 12B6 motion, which the court below did not reach. Can you just, I'm not, it may be academic, I'm not really sure that I see much daylight between what our U.S. Supreme Court has said about direct versus derivative as against what the Israeli court seemed to have said about direct versus derivative as against what Florida courts have said about direct versus derivative. But can you explain to me why it is, I think Judge Proctor is sort of interested in this as well, why is it on a federal statutory claim we look to state law as to the nature of the cause of action? Because in the cases we cite all do say when you consider the direct derivative issue, you look to the relevant law, the state of incorporation. They don't all articulate the reason, but I believe the reason for that is that this issue, direct versus derivative, implicates the powers of a corporation and its board, which is a matter of state law. That's not saying that state law applies to the substantive claims. And that is a red herring that the plaintiff has introduced. There is no finding by the court below, there is no argument by the defendants that state law, that is Israeli state law, or Florida state law, would apply to his claims under Section 14A. Those are evaluated under the statutory law and precedent under Section 14A of the Securities Exchange Act. The point is that when you look to determine whether the claim is direct or derivative in nature, that is a matter of state law because it implicates the powers of the corporation. With respect to the issue of the difference, I agree that there is not a meaningful difference here between the Florida law and the Israeli law with respect to the direct derivative distinction. And I think Judge Rosenberg got that right as well in her opinion, which is that in Israel, the court articulated in the precedents we submitted as saying that a shareholder may not assert a claim directly unless he sustained a direct injury and sustained damage that is not common to all shareholders. And that's virtually identical or substantially the same as the direct harm requirement and the special injury requirement under Florida law. No one raised in the district court any issue regarding English translation of these Israeli decisions on what's derivative and why? No, there was no challenge to the translations, to the accuracy of the citations, to the accuracy of our synthesis of the effect of that holding. That was never disputed below. Moreover, even if the court, as we discussed, were to look to Florida law, the same result would apply as Judge Rosenberg found given the special injury test. So therefore, what the plaintiff asserts is a derivative claim and the court correctly held that he could not pursue that directly. With respect, the main injury, the injury he asserts, is also woefully deficient under the relevant standards in that the only economic injury that he has talked about is the sale price ultimately to the company. We agree with your position on derivative nature of this claim. We don't have to reach that issue, do we? You do not have to reach that issue. You do not have to reach that issue. We set forth that length in our brief, and I would be happy to discuss any aspect of that as to which you have any questions. I think the lack of causation to the claims is glaringly apparent, but no, you do not need to reach that if you decide to affirm on the direct derivative issue. That sounded like a good conclusion. Okay. Thank you very much. Thank you very much. I want to step on Judge Newsom's toes. Please. All right, Mr. Newtson, you've got five minutes remaining. And I won't take all five minutes. Okay. This isn't a special injury test question. It's a statutory contractual. It's not even contractual, quite frankly. It's a statutory violation. It's one of the three prongs that were delineated and De Niro identified as Treluza. It was also recognized in Rail v. Muscle Beach. Do you have any view on what Mr. Reeder said about why we look to state law in determining whether something is derivative or direct? First, do you agree that you look to state law? And second, do you agree with his rationale for why you do? Honestly, I have no idea why Florida does this. And the reason why I say that, and I'm dead serious, the complaint pleads federal law security violations. It does not plead Florida state law violations. For whatever reason, Florida district court cases, and there's others around, will take a look at it and say, well, is it really direct or is it really derivative? Because if it's a derivative, then you do look to state court. But once you get to the fact that there's an alleged violation of a federal state law, I'm not quite sure why the district court would do that analysis. It's okay, she did the analysis, but she just reached the wrong conclusion, because you cannot have a violation of federal law not being a direct shareholder. Your Honor, Judge Rosenberg cited to an unpublished 11th Circuit case for this proposition, a District of Maryland case, a District of District Columbia case, and another Southern District Florida case, in her opinion on pages 5 and 6. I understand that she did that. Just to boot, at least in my notes, I've got a 7th Circuit case, a 9th Circuit case, a couple of treatises. I mean, it seems fairly well settled that you look to state law. I was just curious as to why. But even if you look to . . . Well, I guess the reason why you'd look to state law is because you'd look to where the corporation's actually based. So it's a matter of substantive corporate law. It's going to be back to, you know, where are they based? Well, they're based in West Palm Beach. They might be an Israeli corporation, but they're American subsidiaries over here. Everything's run out of West Palm Beach. The only thing that did not happen in West Palm Beach was the shareholder vote, which was happening in their New York offices, back in July 31st of 2017. And that's a difference without distinction. It's still not in Israel. It's still here in the United States. And, you know, they are traded on NASDAQ. I mean, they're traded on the United States Securities Exchange. So they can't really claim . . . You know, you can't apply us . . . You can't force us to comply with United States securities laws in our proxy statements. They have to. That's part of the requirement to be registered on the Securities Exchange Commission. For NASDAQ. I mean, it's . . . I mean, I don't know how else to put it. And with that, I thank you very much for your time. Thank you. Judge Tolfat, I saw you many years . . . I argued before you many, many years ago in the SunTrust Bank case. It was so good to see you again. He's better looking now than he was then, right? Yes. The answer to that question is yes. Yes. Thank you. All right, thank you so much. The case is submitted.